**Affirmed and Opinion filed September 5, 2013.**



**In The**

# Fourteenth Court of Appeals

### NO. 14-12-00204-CR

### KENDRIC JOHNSON, Appellant

### V.

### THE STATE OF TEXAS, Appellee

**On Appeal from the 176th District Court**
**Harris County, Texas**
**Trial Court Cause No. 1336400**

## O P I N I O N

A jury convicted appellant Kendric Johnson of bail jumping and failure to appear, and assessed his punishment at 16 years in prison.[1] Appellant challenges his conviction based on (1) sufficiency of the evidence; (2) jury charge error; and (3) improper jury argument. We affirm.

## Background

Appellant was charged with aggravated robbery, arrested, and later released on bail on October 7, 2010. He appeared in court on October 8, and his court date

---

[1]*See* Tex. Penal Code Ann. § 38.10(a), (f) (Vernon 2011).

was reset several times so he could hire an attorney. Appellant returned to court on October 29 and November 5. He declared indigence on November 5, and the trial court appointed Luci Davidson as counsel to represent him in further proceedings. Appellant failed to appear for his next set court date on December 8, 2010. The trial court immediately issued a warrant for his arrest and entered a forfeiture judgment against him two days later. On February 3, 2011, appellant was arrested and returned to custody.

A two-day jury trial was held beginning on February 29, 2012. The jury found appellant guilty of bail jumping and failure to appear, and returned a sentence of 16 years in prison. Appellant filed a timely appeal.

## Analysis

### I.     Sufficiency of the Evidence

Appellant argues that the evidence is legally insufficient to support his conviction for bail jumping and failure to appear because there is no evidence he had notice of his next court date. Therefore, appellant contends the State cannot establish that he intentionally and knowingly failed to appear in court on that date.

The State is required to prove each element of a criminal offense beyond a reasonable doubt, and the reviewing court uses a legal sufficiency standard in determining whether the evidence is sufficient to support the State's assertions. *Brooks v. State*, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010). A successful challenge to evidentiary sufficiency mandates an acquittal and bars retrial. *Graham v. State*, 643 S.W.2d 920, 924 (Tex. Crim. App. 1981); *Banks v. State*, 158 S.W.3d 649, 650 n.1 (Tex. App.—Houston [14th Dist.] 2005, pet. ref'd). Thus, sufficiency challenges must be addressed regardless of the outcome of other issues in a case. *Graham*, 643 S.W.2d at 924; *Banks*, 158 S.W.3d at 650 n.1.

2

The court views all of the evidence in the light most favorable to the verdict to determine whether a rational juror could have found all of the elements of the offense beyond a reasonable doubt. *Gear v. State*, 340 S.W.3d 743, 746 (Tex. Crim. App. 2011) (citing *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979)). The jury is responsible for resolving conflicts in testimony, weighing the evidence, and drawing reasonable inferences from it; the appellate court cannot substitute its judgment for that of the factfinder. *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010). The legal sufficiency standard of review for the appellate court is the same for direct and circumstantial evidence. *Id.*; *King v. State*, 29 S.W.3d 556, 565 (Tex. Crim. App. 2000).

To convict a person for bail jumping and failure to appear, the State must prove that the person (1) was lawfully released from custody, with or without bail; (2) on condition that he subsequently appear; and (3) intentionally or knowingly failed to appear in accordance with the terms of his release. *See* Tex. Penal Code Ann. § 38.10(a) (Vernon 2011); *Walker v. State*, 291 S.W.3d 114, 117 (Tex. App.—Texarkana 2009, no pet.); *Burns v. State*, 958 S.W.2d 483, 488 (Tex. App.—Houston [14th Dist.] 1997, no pet.).

Appellant's first argument on appeal turns on lack of notice, which negates the intentional and knowing element of the criminal offense. *See Euziere v. State*, 648 S.W.2d 700, 702 (Tex. Crim. App. 1983). Appellant contends that the State failed to produce sufficient evidence he had notice to appear.

Proof that the accused was free under an instanter bond is prima facie proof of notice to appear. *Solomon v. State*, 999 S.W.2d 35, 37 (Tex. App.—Houston [14th Dist.] 1999, no pet.); *Richardson v. State*, 699 S.W.2d 235, 238 (Tex. App.—Austin 1985, pet. ref'd); *see also Euziere*, 648 S.W.2d at 702. The bond itself satisfies the State's burden of proving that appellant intentionally and knowingly

failed to appear in accordance with the terms of the release unless appellant can establish evidence to the contrary. *Solomon*, 999 S.W.2d at 37; *Richardson*, 699 S.W.2d at 238; *see also Euziere*, 648 S.W.2d at 702; *Burns*, 958 S.W.2d at 488. If appellant offers evidence that he did not have notice to appear, the State must produce further evidence sufficient to justify a rational factfinder in finding that appellant had actual notice, or engaged in a course of conduct designed to avoid receiving notice. *Etchison v. State*, 880 S.W.2d 191, 192 (Tex. App.—Texarkana 1994, no pet.); *Richardson*, 699 S.W.2d at 238.

The facts here parallel *Euziere*, 648 S.W.2d at 702. The defendant in *Euziere* was released pursuant to an instanter bond. *Id.* After several subsequent court appearances, the defendant failed to appear as scheduled on July 31, 1978. *Id.* The trial court declared his bond forfeited and issued a warrant; the defendant was arrested and indicted for failure to appear. *Id.*

The defendant contended on appeal that the State did not prove he intentionally and knowingly failed to appear in court on July 31, 1978. *Id.* At trial, the State introduced the bail bond issued when defendant was first released from custody in September of 1977. *Id.* That bond set out the terms and conditions of defendant's release, and directed defendant to appear instanter in the court in which he was indicted. *Id.* The Court of Criminal Appeals stated: "This language apprises appellant of his obligations to the court and sets forth the terms and conditions of appellant's release." *Id.* Further, the instanter wording of the bond provided defendant with sufficient and proper notice of when to appear. *Id.* The Court concluded, "Since appellant had notice of the setting and since appellant asserted 'no reasonable excuse' for his failure to appear, the evidence is sufficient to prove that appellant intentionally and knowingly failed to appear in accordance with the terms of his release." *Id.*

In a case from this court, a defendant was released on a bond directing him to make a personal appearance before the court "instanter." *Solomon*, 999 S.W.2d at 37. Defendant's counsel testified that he wrote a letter notifying defendant of the setting and date of his trial, but sent it to a different address than that listed on the instanter bond. *Id.* The letter was returned unopened. *Id.* Defendant's attorney further testified that his secretary either "told defendant's mother of the setting or left a message on her answering machine notifying him of the date." *Id.* The court held that the instanter bond was a prima facie showing of notice by the State, and the returned letter was merely evidence that defendant did not receive that letter. *Id.* Further, the court rejected the defendant's argument that the State failed to meet its burden of proof simply because the court coordinator could not testify to whether defendant received notice. *Id.* at 38.

Here, Mindy Ochsner, an employee of the Harris County district clerk's office, testified at trial regarding appellant's district court and bond forfeiture files. During Ochsner's testimony, the State introduced appellant's instanter bond into evidence. The instanter bond stated in pertinent part:

> THE CONDITION OF THIS BOND IS THAT THE DEFENDANT HAS BEEN CHARGED WITH A Felony offense and to secure his release from custody is entering into this obligation binding him to appear before Dist[rict] Crim[inal Court] 176 County of Harris County, Texas. NOW THEREFORE, IF THE SAID PRINCIPAL SHALL WELL AND TRULY MAKE HIS PERSONAL APPEARANCE BEFORE SAID COURT INSTANTER AS well as before any other court to which the same may be transferred for any and all subsequent proceedings that may be had relative to said charge in the course of criminal actions based on said charge, and there remain from day to day and term to term of said courts, until discharged by the course of law, then and there to answer said accusation against him . . .

The bond was signed by appellant on October 7, 2010, the date he was released

5

from custody.

During Ochsner's testimony, the State also introduced the November 5, 2010 order appointing Luci Davidson as appellant's trial counsel. The order stated that appellant's case was reset for December 8, 2010; the order was signed by appellant. Ochsner testified that she did not witness appellant signing the order. She also testified that, as part of the normal court process, an unrepresented defendant typically receives notice of a reset date from the court coordinator; counsel begins to control the interactions between a defendant and the court after appointment. Neither party offered evidence as to how appointed counsel and appellant interacted, and appellant's appointed counsel did not testify at trial.

Appellant introduced a blank version of a single-page order appointing counsel, corresponding to the signed and dated copy introduced by the State. The blank version contained multiple color-coded copies of the single-page order, each designated for a different party, including a copy designated for the defendant. However, neither party presented information as to whether appellant received a copy of the signed version introduced by the State. Appellant's only other evidence was the two reset forms showing that he appeared in court on the two reset dates when he was unrepresented by counsel.

In this case, as in *Euziere*, it was undisputed that appellant was released on an instanter bond, and that he returned to court multiple times following his release. As in *Solomon*, there is no evidence that appellant lacked notice of the court date when he signed the order appointing counsel; this order included the December 8, 2010 court date. There is no evidence that his appointed counsel failed to inform him of his court date, or that he did not receive a copy of the order appointing counsel.

Based on this record, a rational jury could have found that appellant

6

intentionally and knowingly failed to appear in accordance with the terms of his release. *See Euziere*, 648 S.W.2d at 702; *see also Caudillo v. State*, 541 S.W.2d 617, 618-19 (Tex. Crim. App. 1976) (instanter bond was sufficient to meet State's burden of proof when appellant's testimony indicated that appellant had discussed the setting date with one attorney, even though appellant's other attorney testified that he did not receive notice); *Barrera v. State,* 978 S.W.2d 665, 671 (Tex. App.—Corpus Christi 1998, pet. ref'd) (evidence was sufficient to support conviction for bail jumping where State introduced a copy of the notice of trial setting that appellant acknowledged initialing).

Appellant misplaces his reliance on several cases in connection with his argument that the State did not meet its burden of proof. Appellant first relies on *Fish v. State*, 734 S.W.2d 741, 741-42 (Tex. App.—Dallas 1987, pet. ref'd). In that case, the instanter bond was deficient because it demanded that defendant appear "instanter," but did not name the court in which defendant was supposed to appear. *Id.* The State introduced no other evidence at trial that defendant had actual notice of the court before which he was to appear. *Id.* at 742. The court of appeals concluded that the instanter bond itself was evidence that defendant had no notice of the hearing location, and that no rational jury could have found that defendant intentionally and knowingly failed to appear in accordance with the terms of his release. *Id.* at 743-44.

*Fish* is distinguishable because the instanter bond issued to appellant clearly states the location for appellant's future appearances, and the record reflects that appellant appeared in the correct court more than once.

Appellant also relies on *Bell v. State*, 63 S.W.3d 529 (Tex. App.—Texarkana 2001, pet. ref'd). In *Bell*, the defendant appeared in court once after being released on an instanter bond. *Id.* at 531. The bond did not state the date, location, or time

7

of his required appearance. *Id.* The State conceded that the blanks constituted some evidence that defendant had no notice. *Id.* at 532. At a court appearance after he was released on bail, defendant signed an "Appearance and Announcement Form" stating the date and time of his next required appearance before the court. *Id.* The State offered additional testimony by two witnesses that they and defendant attempted to get to court, but were prevented from doing so by car trouble. *Id.* There was no evidence that the defendant ever contacted the court, his bondsman, or attorney, or returned to the correct county until he was arrested elsewhere. *Id.* The court of appeals upheld defendant's conviction because the State provided evidence indicating that defendant had actual notice of the hearing, despite the deficiency in the instanter bond. *Id.* at 533.

Finally, appellant relies on *Walker*, 291 S.W.3d at 117-20. In *Walker*, the defendant testified that he had not received notice of his arraignment date and offered evidence that he typically received mail at a post office box, rather than at the home address where the district attorney's office sent his notice. *Id.* at 119. The notice was not returned as undeliverable, the bondswoman testified that she spoke with defendant's aunt on the phone, and defendant's aunt confirmed that defendant received the postcard. *Id.* The bondswoman never heard from defendant, who did not appear on the set trial date. *Id.* A jury convicted the defendant; the court of appeals upheld the conviction, recognizing that any contradictions in the evidence were best resolved by the jury. *Id.* at 120.

Appellant asserts that *Walker* and *Bell* are analogous to the circumstances here because the State does not have other evidence beyond the instanter bond. Therefore, appellant contends that the State has failed to meet its burden of proving appellant intentionally and knowingly failed to appear. This argument fails for two reasons. First, the State does not have to produce evidence beyond a valid

8

instanter bond in the absence of any evidence that appellant did not have notice. *See Euziere*, 648 S.W.2d at 702; *Solomon*, 999 S.W.2d at 37. Second, the State did produce the order appointing trial counsel, which contained the next court date and time, and was signed by appellant.

Viewing all of the evidence in the light most favorable to the verdict, we conclude that a rational factfinder could have determined that appellant intentionally and knowingly failed to appear in accordance with the terms of his release. Accordingly, we overrule appellant's first issue.

## II. Charge Error

Appellant argues that the trial court erred by overruling his objection to the definitions of "intentional" and "knowing" in the jury charge. According to appellant, these definitions included unnecessary language, decreased the State's burden of proof, and caused harm.

In reviewing a jury charge, the court first determines whether error occurred. *Ngo v. State*, 175 S.W.3d 738, 743 (Tex. Crim. App. 2005); *Herrera v. State*, 367 S.W.3d 762, 775 (Tex. App.—Houston [14th Dist.] 2012, no pet.). If the court finds error, it then evaluates whether sufficient harm resulted from the error to require reversal. *See Ngo*, 175 S.W.3d at 743; *Herrera*, 367 S.W.3d at 775.

### A. Error

The third degree felony of bail jumping and failure to appear occurs when a person (1) is lawfully released from custody with or without bail; (2) on a felony charge; (3) on the condition that he subsequently appear in court on that charge; and he (4) intentionally and knowingly; (5) fails to appear in court in accordance with the terms of his release. *Walker*, 291 S.W.3d at 118; *see* Tex. Penal Code § 38.10(a); *Burns*, 958 S.W.2d at 488. Appellant challenges the following

9

definitions of "intentionally" and "knowingly" included in the jury charge:

> A person acts intentionally, or with intent, with respect to the nature of his conduct or to a result of his conduct when it is his conscious objective or desire to engage in the conduct or cause the result.

> A person acts knowingly, or with knowledge, with respect to the nature of his conduct or to circumstances surrounding his conduct when he is aware of the nature of his conduct or that the circumstances exist. A person acts knowingly, or with knowledge, with respect to a result of his conduct when he is aware that his conduct is reasonably certain to cause the result.

*See* Tex. Penal Code § 6.03(a), (b) (Vernon 2011).

Appellant asserts that bail jumping and failure to appear is solely a result-of-conduct offense because it is defined in terms of one's objective to produce a specific result. He argues that engaging in conduct, which is the essence of a nature-of-conduct offense, is not relevant in a result-of-conduct offense. According to appellant, the jury could convict appellant under the court's charge merely because of the nature of his conduct and not because of any conscious objective or desire to cause the result of his conduct. Appellant argues that this provides an alternative theory of liability which lessens the State's burden of proof and makes bail jumping and failure to appear a strict liability offense, which it is not. Thus, appellant asserts that the language in the jury charge caused him harm.

The State counters that the jury instructions were not erroneous because bail jumping and failure to appear includes all three conduct elements. While agreeing that the offense is defined in terms of one's objective to produce a specific result, the State asserts that the nature of the conduct (failing to appear in accordance with the terms of a lawful release) is criminalized. The State also contends that the circumstances surrounding the conduct (terms of release on bond that require such an appearance) are what make otherwise innocent behavior an offense. Therefore,

10

the State argues that all three conduct elements were properly included in the "intentional" and "knowing" definitions given to the jury.

For the sake of argument, we will assume without deciding that there was error in the jury charge as appellant alleges. We must next determine whether the alleged charge error cause appellant actual harm. *Cook v. State*, 884 S.W.2d 485, 491 (Tex. Crim. App. 1994); *Rolle v. State*, 367 S.W.3d 746, 757 (Tex. App.—Houston [14th Dist.] 2012, pet. ref'd).

### B. Harm

Our analysis of harm will differ depending on whether appellant preserved the asserted charge error by objecting in the trial court. *See Barrios v. State*, 283 S.W.3d 348, 350 (Tex. Crim. App. 2009); *Rolle*, 367 S.W.3d at 757. If there is error in the charge and appellant objected to the error at trial, reversal is required if the error is calculated to injure the rights of the appellant, which has been defined to mean that there is "some harm." *Barrios*, 283 S.W.3d at 350; *Rolle*, 367 S.W.3d at 757. Thus, properly preserved errors require reversal as long as the error is not harmless. *Barron v. State*, 353 S.W.3d 879, 883 (Tex. Crim. App. 2011) (quoting *Arline v. State*, 721 S.W.2d 348, 351 (Tex. Crim. App. 1986) ("[T]he presence of *any* harm, regardless of degree, which results from preserved charging error, is sufficient to require a reversal of the conviction.")).

An error that was not objected to requires reversal only if it was a "fundamental error" that was so egregious and created such harm that the defendant did not have a fair and impartial trial. *Barrios*, 283 S.W.3d at 350; *Rolle*, 367 S.W.3d at 757. Jury charge error is egregiously harmful if it affects the very basis of the case, deprives the defendant of a valuable right, or vitally affects a defensive theory. *Stuhler v. State*, 218 S.W.3d 706, 719 (Tex. Crim. App. 2007). Egregious harm is determined on a case-by-case basis and is a difficult standard to

11

prove. *Hutch v. State*, 922 S.W.2d 166, 171 (Tex. Crim. App. 1996); *Martinez v. State*, 190 S.W.3d 254, 259 (Tex. App.—Houston [1st Dist.] 2006, pet. ref'd).

In analyzing harm, we must consider the following four factors: (1) the charge itself; (2) the state of the evidence, including contested issues and the weight of the probative evidence; (3) arguments of counsel; and (4) any other relevant information revealed by the trial record as a whole. *Hutch*, 922 S.W.2d at 171; *Hill*, 265 S.W.3d at 543 (citing *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984)). Neither the State nor the defense has a burden to show harm. *Warner v. State*, 245 S.W.3d 458, 462 (Tex. Crim. App. 2008).

Because the harm analysis turns on whether charge error is preserved, we must determine whether appellant objected in the trial court to the charge error he now asserts on appeal. A party must present to the trial court a timely request, objection, or motion stating the specific grounds for the ruling desired in order to preserve a complaint for appellate review. *Rothstein v. State*, 267 S.W.3d 366, 373 (Tex. App.—Houston [14th Dist.] 2008, pet. ref'd); *see* Tex. R. App. P. 33.1(a). Further, an appellant's contention on appeal must comport with the specific objection made at trial. *Wilson v. State*, 71 S.W.3d 346, 349 (Tex. Crim. App. 2002); *Rothstein*, 267 S.W.3d at 373.

### 1. Definition of "intentional"

We begin our analysis with respect to the allegedly erroneous inclusion of nature-of-conduct language in the definition of "intentional" by determining whether appellant preserved the error. The trial court gave the following definition of "intentional" in the abstract portion of the jury charge:

> A person acts intentionally, or with intent, with respect to the nature of his conduct or to a result of his conduct when it is his conscious objective or desire to engage in the conduct or cause the result.

12

*See* Tex. Penal Code § 6.03(a). The court overruled trial counsel's following objection at the charge conference:

> The additional objections that I have would be with regard to the culpable mental state. I think this is a circumstances surrounding the offense type situation. The definitional language in the court's charge regarding intentional conduct and knowing conduct includes language other than the circumstances surrounding the conduct, so I'm objecting to that, specifically with regard to the instruction paragraph on intentional or acting intentionally with respect to the nature of his conduct. I don't believe this is a nature of his conduct oriented offense, and so I'm asking the court to strike that language from the charge and just have in there with regard to intentional — an intentional culpable mental state the result of his conduct language.

While counsel began his objection with the statement "I think this is a circumstances-surrounding-the-offense type situation," his final sentence asked the court specifically to remove the nature-of-conduct language and leave in the result-of-conduct language. Since this request is aligned with his argument on appeal, appellant properly preserved error as to the definition of "intentional" and some harm to appellant will require reversal of his conviction.

Appellant argues that he was harmed by the charge error because the extraneous language provided an alternative theory of liability which lessened the State's burden of proof.

To assess this contention, we first review the jury charge as a whole. *Hill*, 265 S.W.3d at 544. "In assessing the harm resulting from the inclusion of improper conduct elements in the definitions of culpable mental states, we 'may consider the degree to which the culpable mental states were limited by the application portions of the jury charge.'" *Patrick v. State*, 906 S.W.2d 481, 492 (Tex. Crim. App. 1995); *Cook*, 884 S.W.2d at 492 n.6. Here, the application paragraph of the jury charge read:

> Now, if you find from the evidence beyond a reasonable doubt that in Harris County, Texas, Kendric Johnson . . . heretofore on or about the 8th day of December, 2010, did then and there unlawfully, after having been lawfully released from custody with bail, on the condition that he would subsequently appear in District Court Number 176 of Harris County, Texas, on the 8th day of December, 2010, where he was charged in Cause No. 1280578 with the felony offense of aggravated robbery, intentionally or knowingly fail to appear in the aforesaid court on the aforesaid date in accordance with the terms of his release, then you will find the defendant guilty of bail jumping and failure to appear . . . .

The relevant portion of the application paragraph of the jury charge in this case authorized the jury to convict if it found that appellant "intentionally or knowingly failed to appear in the aforesaid court . . . ." The culpable mental states directly modify the phrase "fail to appear." Therefore, the application portion did not, as appellant contends, allow the jury to convict appellant "simply because he did not appear as he should have, and not as a result of any conscious objective or desire not to be present."

The Court of Criminal Appeals addressed a similar claim in *Hughes*, 897 S.W.2d at 294-97. There, the defendant argued that the trial court erred in overruling his objections to the jury charge and including the entirety of the Texas Penal Code section 6.03 definitions of "intentional" and "knowing" in the jury charge. *Id.* at 294; *see* Tex. Penal Code § 6.03(a), (b). The *Hughes* court held that the trial court erred in including nature-of-conduct language in the jury charge definitions because capital murder included only result-of-conduct and circumstances-surrounding-conduct elements. *Hughes*, 897 S.W.2d at 295. Appellant preserved the error by timely objecting at trial, so the court analyzed the error for "some harm." It found no harm because the application portion of the charge provided guidance for the jury by pointing the jury to the appropriate portions of the definitions. *Id.*

14

If failure to appear were a result-of-conduct offense as appellant claims, the same conclusion would apply here. *See also Herrera*, 915 S.W.2d at 98. Nothing in this charge emphasized the nature-of-conduct definition that appellant contends was erroneous, and the application paragraph properly placed the culpable mental states. *See Coleman*, 279 S.W.3d at 687 ("The 'result of conduct' mental state is not a part of the application paragraph. We find no harm resulted from the court's inclusion . . . in the definitions section of the charge."); *Delgado*, 944 S.W.2d at 499 ("Significantly, the 'nature of conduct' language used in the court's definition paragraphs was not repeated in the application paragraphs. We hold that this instruction appropriately limited the overbroad language used in the court's definitions . . . .").

Turning to the second factor, we examine the state of the evidence, including contested issues and the weight of the probative evidence, for actual harm. The only contested issue at trial was whether appellant had notice to appear.

The State relied on the instanter bond, which stated the name and location of the trial court and directed appellant to appear "instanter," as evidence that appellant had notice to appear. As additional evidence, the State offered the order appointing counsel, which was signed by appellant and included his next court date to show appellant had actual notice of when and where to appear.

Appellant's only evidence was his prior reset forms and a blank order appointing counsel. He used these to argue to the jury that there was no evidence that he received a copy of the order appointing counsel. Appellant also asserted that it was possible that his appointed trial counsel had not communicated his court date to him. To convict appellant, the jury had to decide whether appellant had notice of his hearing based on the presented evidence. As discussed above, the evidence was legally sufficient for a rational jury to convict appellant for bail

15

jumping and failure to appear. In this context, the jury was allowed to decide whether appellant intentionally and knowingly failed to appear.

Third, we examine the arguments of counsel, which also turned on notice. Trial counsel claimed that the State failed to prove beyond a reasonable doubt that he had notice of his court date. Trial counsel emphasized that appellant's appointed counsel did not testify, and that appellant returned to court several times while he was unrepresented by counsel, indicating that appellant did not receive communication from the court once appointed counsel began to represent him. Trial counsel stated in his closing argument:

> [W]hen you go through the charge you're going to see where it says a person acts intentionally or with intent with respect to the nature of his conduct or a result of his conduct if it's his conscious objective or desire to engage in the conduct or cause the result. They had to prove that he knew that he was supposed to be here on that day, specifically was given information with regard to that . . . And that he said, consciously made the decision I'm not going . . . And I think their proof failed with regard to notice . . . .

Trial counsel concluded that the State had to prove appellant "consciously made the decision I'm not going. I'm not going to court that day." He asked the jury to decide whether appellant consciously decided not to appear. Because trial counsel's comments properly applied the culpable mental state to the alleged failure to appear, the passing reference to nature as well as result of conduct did not mislead the jury.

The State emphasized the instanter bond and the signed order appointing counsel which contained the court setting date as satisfying its burden of proof beyond a reasonable doubt. The State countered appellant's claim that appellant had less notice after receiving a court-appointed attorney by saying, "So what's more likely, that all of a sudden now the defendant has an attorney and now he

16

doesn't know what to do, he doesn't know to show up, even though he's been showing up?  Or now he just understands the gravity of the situation?  I would argue to you that now he understands the gravity and that's why he ran."  This argument also emphasized to the jury the importance of deciding whether he had notice of his court date, and thus intentionally failed to appear.

The fourth factor directs us to review the trial record as a whole for any other relevant information.  In this case, the jury heard witness testimony regarding the purpose of an instanter bond, court procedure surrounding a defendant's release on bail, and the specific history of appellant's release, subsequent appearances, and failure to appear.  The jury was given the opportunity to apply the law given in the application portion of the charge to the facts as presented by both parties.  Reviewing the record as a whole, there is no other information contained within the record to show sufficient harm from the trial court's failure to limit the definition of "intentional" to result-of-conduct.  Based on the four factors, we conclude that the alleged charge error was harmless.

### 2.    Definition of "knowing"

We next address whether appellant was harmed by the definition of the "knowing" mental state as provided in the jury charge.  The trial court included this definition in the jury charge:

> A person acts knowingly, or with knowledge, with respect to the nature of his conduct or to circumstances surrounding his conduct when he is aware of the nature of his conduct or that the circumstances exist.  A person acts knowingly, or with knowledge, with respect to a result of his conduct when he is aware that his conduct is reasonably certain to cause the result.

*See* Tex. Penal Code § 6.03(b).  Appellant objected by saying:

> The paragraph which defines acting with knowledge or knowingly acting, again, includes language other than the circumstances

17

surrounding his conduct. I'd ask the Court to strike through the definitional language in that paragraph regarding the nature of his conduct. I don't think it's a nature of the conduct oriented offense. Knowing in this context do I think it is a result of his conduct oriented offense, when you're talking about acting with knowledge, so I'd ask that the Court strike the last sentence of that paragraph and only leave in there person acts knowingly or with knowledge with respect to the circumstances surrounding his conduct when he is aware that the circumstances exist. In this case the circumstances we're talking about is notice from his lawyer that he was supposed to be back on December 8, 2010.

The court overruled appellant's objection.

A party fails to preserve error when the contention urged on appeal does not comport with the specific complaint made at the trial court. *Wilson*, 71 S.W.3d at 349 (Tex. Crim. App. 2002); *Rothstein*, 267 S.W.3d at 373. On appeal, appellant asserts that bail jumping and failure to appear is a result-of-conduct offense and that including nature-of-conduct language in the definition was error. At trial, appellant specifically requested that the court *remove* the language addressing result of conduct as well as nature of conduct, and leave *only* the circumstances-surrounding-conduct language. Appellant therefore failed to preserve error for appellate review because his contention on appeal does not correspond to the objection he made at trial. *Wilson*, 71 S.W.3d at 349; *Rothstein*, 267 S.W.3d at 373; *see* Tex. R. App. P. 33.1.

When jury charge error exists, but was not preserved for appeal, reversal is mandated only if it was a "fundamental error" that was so egregious and caused such harm that the defendant did not have a fair and impartial trial. *Barrios*, 283 S.W.3d at 350; *Rolle*, 367 S.W.3d at 757. A court determines egregious harm by considering the same four factors that it considers in a "some harm" analysis. *See Warner*, 245 S.W.3d at 461; *Rolle*, 367 S.W.3d at 759; *Hill*, 265 S.W.3d at 543.

18

Having already determined that inclusion of the expanded definition of the "intentional" mental state constituted harmless error, we equally conclude that, based on the four factors, the erroneous inclusion of the expanded definition of the "knowing" mental state constituted harmless error. Accordingly, we overrule appellant's second issue.

## III.   Jury Argument

Appellant asserts that the trial court erred in overruling appellant's objection to the State's closing argument when the State "improperly argued outside the record that proof of an instanter bond provides prima facie evidence of the appellant's intentional and knowing failure to appear, thereby satisfying the State's burden of proof beyond a reasonable doubt."

Proper jury argument falls within one of four general areas: (1) summation of the evidence; (2) reasonable deduction from the evidence; (2) answer to argument of opposing counsel; and (4) plea for law enforcement. *Brown v. State*, 270 S.W.3d 564, 570 (Tex. Crim. App. 2008). When jury argument falls outside the approved areas, it will not constitute reversible error unless it is extreme or manifestly improper, violative of a mandatory statute, or injects new facts harmful to the accused into the trial proceeding. *Temple v. State*, 342 S.W.3d 572, 602-03 (Tex. App.—Houston [14th Dist.] 2010) *aff'd*, 390 S.W.3d 341 (Tex. Crim. App. 2013); *see Brown*, 270 S.W.3d at 570. To determine if the prosecutor made an improper jury argument, the reviewing court must consider the entire argument in context, and not merely isolated sentences. *Rodriguez v. State*, 90 S.W.3d 340, 364 (Tex. App.—El Paso 2001, pet. ref'd).

Appellant complains about the following argument the State made during its rebuttal closing argument:

[THE STATE]: According to the Court of Appeals, folks, proof that the accused —

[TRIAL COUNSEL]: Your Honor, I'm going to object to anything according to the Court of Appeals. That's outside the record.

THE COURT: That's sustained.

[THE STATE]: Okay. The case law clearly states —

[TRIAL COUNSEL]: Your Honor, I'm going to object to anything with regard to case law.

[THE STATE]: Judge, he argued about case law stating that it's not — prima facie proof does not constitute evidence beyond a reasonable doubt. My argument is case law clearly states it is proof beyond a reasonable doubt.

[TRIAL COUNSEL]: I'm going to object to —

[THE STATE]: Clearly says that.

[TRIAL COUNSEL]: — the sidebar also.

THE COURT: Don't talk at the same time. Just argue within the record, okay. Thank you.

[TRIAL COUNSEL]: And I'm going to ask for a ruling, Judge. I made a specific objection, when he says according to case law, that's outside the record. I need to have a specific ruling on that.

THE COURT: Well, actually it's invited argument.

[TRIAL COUNSEL]: No, ma'am. I was referring to his comment on opening when he talked about the prima facie evidence from his document. I was responding to his opening comment. That's all it was.

THE COURT: All right. Your objection is overruled. You may proceed.

[TRIAL COUNSEL]: Thank you.

[THE STATE]: Yes, your Honor. The law states prima facie evidence is given by this document. If an accused is under an instanter bond, which this is, there's prima facie evidence that he had knowledge of the setting, he had notice. And that — that prima facie evidence satisfies the State's burden of proof beyond a reasonable doubt unless there is evidence to the contrary.

[TRIAL COUNSEL]: Objection judge. That does not create proof beyond a reasonable doubt.

*            *            *

THE COURT: . . . Your objection is overruled. You may continue.

[TRIAL COUNSEL]: Thank you.

[THE STATE]: Satisfied, but I went beyond that. So I've already satisfied my burden, but it goes beyond that. I gave you a reset, and if you look at that reset, on the reset, State's Exhibit No. 1, it has everything you need to know, the cause number, the court, the crime, the defendant's name, the date he was to appear, December 8, 2010, and it even has his signature down there, all right. So not only do I have evidence, prima facie evidence which satisfies my burden, but I also have a document which he signed which has a date on it. And as defense counsel pointed out in his own exhibit, the last page is the defendant's copy. So he had a copy of this reset form stating —

[TRIAL COUNSEL]: Object to that. That's a misstatement of the law. There's no evidence to show he had that copy. That's my whole point, he did not.

THE COURT: Overruled.

[TRIAL COUNSEL]: Thank you.

To properly preserve error for appellate review, a party must object when improper argument is made, and obtain a ruling on that objection. *Johnson v. State*, 233 S.W.3d 109, 114 (Tex. App.—Houston [14th Dist.] 2007, no pet.); *see Wilson*, 71 S.W.3d at 349; Tex. R. App. P. 33.1(a). The objection must be made at the earliest possible opportunity. *Espinosa v. State*, 194 S.W.3d 703, 708 (Tex. App.—Houston [14th Dist.] 2006, no pet.); *see Wilson*, 71 S.W.3d at 349; *Turner v. State*, 805 S.W.2d 423, 431 (Tex. Crim. App. 1991). Almost every right may be waived by failure to object, even those of constitutional magnitude. *Richardson v. State*, 328 S.W.3d 61, 72 (Tex. App.—Fort Worth 2010, pet. ref'd); *Solis v. State*, 945 S.W.2d 300, 301 (Tex. App.—Houston [1st Dist.] 1997, pet. ref'd). The complaint raised on appeal must comport with the objection made at trial. *Wilson*, 71 S.W.3d

21

at 349. Further, counsel must object each time the allegedly improper argument is made. *Temple*, 342 S.W.3d at 602-03; *Haliburton v. State*, 80 S.W.3d 309, 315-16 (Tex. App.—Fort Worth 2002, no pet.); *Briones v. State*, 12 S.W.3d 126, 129 (Tex. App.—Fort Worth 1999, no pet.); *see Ethington v. State*, 819 S.W.2d 854, 858 (Tex. Crim. App. 1991) ("Further, with two exceptions, the law in Texas requires a party to continue to object each time inadmissible evidence is offered.").

Appellant waived his right to complain about the State's allegedly improper jury argument in this case because he failed to object each time the State made the allegedly improper jury argument. *See Temple*, 342 S.W.3d at 603; *Espinosa*, 194 S.W.3d at 708-09. During voir dire, the State stated:

> And an instanter bond is, I'll explain this in a second, is prima facie evidence of a defendant knew his court date until other evidence is presented showing the defendant did not have notice. . . . And what prima facie evidence means, it means on its face. If I show that instanter bond and prove it was the defendant that signed it or did whatever to it, that means I have prima facie evidence that he had the intention not to appear when he didn't.

At the beginning of the State's closing argument, the State argued:

> We talked about two things in voir dire, one being that if I have instanter paperwork, which is that bond paperwork with this — that's the prima facie case, that he not only had notice of the hearing, but that if he didn't appear it was a prima facie case of intentionally and knowingly not appear unless there was evidence that he did not have notice, and there is no evidence he did not have notice.

Appellant did not object. As set out above, appellant later objected during the State's rebuttal closing argument to the State's allegedly improper jury argument regarding prima facie proof of notice in an instanter bond.

But appellant again failed to object when the State later made the following objectionable and allegedly improper argument:

> So the question really becomes, folks, what does the evidence show? And I would say the evidence is clear and uncontroverted. One, the defendant made on his bond, prima facie evidence. That in itself is enough to prove my burden. But I went beyond that and I gave you the actual reset which he got a copy of which showed the date and had a signature on it. So not only does the prima facie evidence satisfy the burden, but I went beyond that and said, he actually had notice.

When appellant allowed the State to make the complained of argument on three separate occasions in front of the jury without objection — twice before objecting and again after objecting — appellant failed to preserve error for review. Accordingly, we overrule appellant's third issue.

## Conclusion

Having overruled appellant's three issues, we affirm the trial court's judgment.


/s/     William J. Boyce
        Justice


Panel consists of Justices Boyce, Jamison and Busby.

Publish — Tex. R. App. P. 47.2(b).