**Affirmed and Memorandum Opinion filed February 5, 2019.**



In The

# Fourteenth Court of Appeals

---

## NO. 14-17-00377-CR

---

### TERRY DANELL WARD, Appellant

### V.

### THE STATE OF TEXAS, Appellee

---

**On Appeal from the 155th District Court**
**Austin County, Texas**
**Trial Court Cause No. 2017R-0011**

---

## M E M O R A N D U M    O P I N I O N

Appellant Terry Ward appeals his first-degree felony conviction for failing to comply with sex offender registration requirements. He contends that (1) the evidence is insufficient to support his conviction; (2) the trial court erroneously instructed the jury in the punishment charge regarding the use of enhancements in assessing appellant's punishment; and (3) he was denied effective assistance of counsel. We affirm.

BACKGROUND

Appellant was charged with failure to comply with sex offender registration requirements. *See* Tex. Code Crim. Proc. Ann. arts. 62.102(a), 62.055(a) (Vernon 2018). A four-day jury trial was held on May 1, 2017. Appellant stipulated that he had been convicted of indecency with a child and was therefore required to register as a sex offender.

At trial, Officer Damon Hagen of the Austin County Sheriff's Department testified that he was in charge of sex offender registrations in Austin County. He testified that appellant registered with him as a sex offender because appellant resided in Austin County. Appellant reported his address to be a trailer home located at 1078 North Granville Street in Austin County, Texas (the "Granville address") on February 4, 2014.

Officer Hagen testified that appellant was required to comply with several registration requirements, including notifying the correct registration authority— *i.e.*, Officer Hagen at the Austin County Sheriff's Department—of his home address, phone number, and job location. Officer Hagen provided appellant with a sex offender registration form on April 2, 2014 which outlined the specific registration requirements. Officer Hagen also discussed the registration form with appellant. Appellant filled out the form and initialed each requirement at the time, including the provision requiring him to notify the registration authority seven days before moving from his registered home address. On July 16, 2014, appellant again confirmed his address was 1078 North Granville Street in Austin County, Texas.

Officer Hagen stated he became concerned appellant no longer lived at the Granville address after receiving "an anonymous call saying that [appellant] was not living at [the Granville] address and was living in San Felipe" in December 2014. Shortly thereafter, Officer Hagen went to the Granville address in unsuccessful

attempts to locate appellant at the trailer home at 11:15 a.m. on January 5, 2015; at 5:50 a.m. on January 6, 2015; and at 11:40 a.m. on January 9, 2015. Officer Hagen also asked Police Officer Rubin Leal, who worked the night shift, to check appellant's registered Granville address during his shift. Officer Leal visited the Granville address several times in the middle of the night.

Officer Hagen testified that he neither saw appellant at the Granville address nor saw "any sign that anybody was living at that property." According to Officer Hagen, there was "a lot of trash laying around" inside the trailer home and it looked like, "Junk. Like a dump. Abandoned. Unlivable." Some windows were boarded up, some windows were left open, there was a "[b]roken out window," one door was kicked in and could not be closed, and another door was "not even on the hinges."

Officer Hagen concluded that appellant did not live at the Granville address and obtained a warrant for appellant's arrest. Due to the anonymous tip that appellant lived in San Felipe and his previous knowledge that appellant's children went to school in Sealy, Officer Hagen contacted the Sealy Independent School District and obtained the home address of appellant's children in San Felipe. Officer Hagen then travelled to the children's home in San Felipe, accompanied by U.S. Marshals Kozielski and Mattuse. When the officers arrived at the home, appellant answered the door. Officer Hagen took appellant into custody and testified appellant never informed him that appellant moved (or intended to move) from the Granville address.

Police Officer Rubin Leal of the Austin County Sheriff's Department also testified at trial. He stated that he visited appellant's Granville address as requested by Officer Hagen at 2:00 a.m. on January 7, 2015; at 1:50 a.m. on January 10, 2015; and at 2:15 a.m. on January 12, 2015. Officer Leal never saw appellant at the Granville address. Officer Leal observed that "most of the windows on the trailer were broken and the door seemed to barely be standing up on the front door." It did not appear to

3

Officer Leal that "anybody had lived there for quite some time."

U.S. Marshal Matthew Kozielski testified that he travelled with Officer Hagen to appellant's children's home in San Felipe to assist with appellant's arrest. At the time, only appellant and his teenage daughter ["D.W."] were at home. While Officer Hagen handcuffed appellant, U.S. Marshal Kozielski together with U.S. Marshal Mattuse questioned D.W. U.S. Marshal Kozielski testified, "We basically asked her how long Mr. Ward had been living at the residence and how long she had been living at the residence and she said she had been staying there for approximately a month and a half and that Mr. Ward had been there the entire time that she had been living there."

D.W. also testified at trial. She stated that she lived at the San Felipe home with her mother, sister, younger brother, and twin brother. She stated that officers arrested appellant at her San Felipe home in January 2015 and questioned her "if Terry Ward lived there and [she] told them yes." She testified that the officers "didn't specify which Terry Ward they were talking about, so [she] thought they were talking about [her] brother." D.W. also testified she did not remember telling the officers that her "dad, Terry, had been staying there for a month and a half." D.W. stated that appellant often visited and stayed late at the home in San Felipe but never stayed later than "11:30 or 12:00."

The jury also heard testimony from appellant's cousin, Jamie Davis, who lived across from appellant's registered trailer home. Davis testified that he did not see appellant at the Granville address in December 2014 and January 2015, although he also stated that he "stayed in the house all the time" to take care of his mother and grandmother.

After the State rested, the defense called several witnesses. Appellant's aunt and next-door neighbor, Angela Wolfe, testified that appellant lived at the Granville address in January 2015. Appellant got water from Wolfe by running a water hose

4

through the window to flush his toilet. He used an extension cord from Wolfe's home for electricity to run electric heaters in the trailer, and he had "some" pre-paid electricity service through San Bernard Electric Co-op.

Appellant's mother testified that in January 2015 appellant came to her house to eat and bathe, but he never stayed overnight. She testified that appellant stayed at her house until 1:00 a.m. or 2:00 a.m. and then either walked to his Granville address or she drove him there. She stated that she was "not aware of him ever expressing an intent . . . to move elsewhere, to live elsewhere."

The jury also heard testimony from appellant's cousin, Johnny Harris. He testified appellant worked for him from 2014 to 2017. Harris claimed he often picked appellant up from the Granville address between 5:40 a.m. and 6:00 a.m., and sometimes as early as 5:30 a.m. Harris claimed appellant never lived anywhere else but in the trailer home at the Granville address. Harris stated the trailer looked "all right" inside and "wasn't trashed out."

Finally, appellant's neighbor, Ronnie Harris, testified he lived across the street from appellant. He testified appellant lived in the trailer home at the Granville address in January 2015. He claimed seeing appellant in the mornings when Johnny Harris picked appellant up for work and in the evenings when Johnny Harris dropped appellant off.

After hearing the evidence, the jury found appellant guilty and assessed his punishment at 99 years' confinement. Appellant filed a timely notice of appeal.

## ANALYSIS

### I.    Sufficiency of the Evidence

Appellant argues in his first issue that the evidence is legally and factually insufficient to support his conviction for failing to comply with sex offender

5

registration requirements because appellant lived at the address he registered with the registration authority in January 2015 and never moved.

The legal sufficiency standard of review is the only standard applied to determine whether the evidence is sufficient to support each element of a criminal offense that the State is required to prove beyond a reasonable doubt. *Temple v. State*, 390 S.W.3d 341, 360 (Tex. Crim. App. 2013) ("[T]his Court now applies only one standard 'to evaluate whether the evidence is sufficient to support a criminal conviction beyond a reasonable doubt: legal sufficiency.'"). For this review, we consider the combined and cumulative force of all admitted evidence and any reasonable inferences therefrom in the light most favorable to the verdict to determine whether the jury was rationally justified in its decision. *Johnson v. State*, 509 S.W.3d 320, 322 (Tex. Crim. App. 2017). Direct evidence and circumstantial evidence are equally probative, and circumstantial evidence alone may be sufficient to uphold a conviction so long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction. *Ramsey v. State*, 473 S.W.3d 805, 809 (Tex. Crim. App. 2015).

The jury is the sole judge of credibility and the weight to be attached to witnesses' testimony. *Temple*, 390 S.W.3d at 360. The jury may accept one version of the facts and reject another, and it may reject any part of a witness's testimony. *Kelley v. State*, 429 S.W.3d 865, 872 (Tex. App.—Houston [14th Dist.] 2014, pet. ref'd). We may not substitute our judgment for that of the jury and must defer to the jury's responsibility to fairly resolve or reconcile conflicts in the evidence. *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010).

A person commits the offense of failure to comply with sex offender registration requirements if he is "required to register and fails to comply with any requirement of" chapter 62 of the Code of Criminal Procedure, entitled Sex Offender Registration Program. *See* Tex. Code Crim. Proc. art. 62.102(a); *Young v. State*, 341 S.W.3d 417,

6

425 (Tex. Crim. App. 2011) ("Article 62.102 is a generalized 'umbrella' statute that criminalizes the failure to comply with any of the registration requirements set out in Chapter 62.").

Article 62.051(a) requires a person with a "reportable conviction" to register "in any county where the person resides or intends to reside for more than seven days." Tex. Code Crim. Proc. art. 62.051(a) (Vernon 2018). A "reportable conviction" includes a conviction for indecency with a child. *Id*. art. 62.001(5)(A) (Vernon 2018). If a person required to register under this chapter intends to change his address, he shall, not later than the seventh day before the intended change, report in person to the local law enforcement authority designated as the person's primary registration authority and provide the authority and the officer with his anticipated move date and new address. *See id*. art. 62.055(a).

There is no dispute appellant was required to register as a sex offender under chapter 62 of the Code of Criminal Procedure in January 2015 because he was convicted of indecency with a child. Appellant's complaint on appeal is that the evidence is insufficient to establish he did not comply with sex offender registration requirements in January 2015 because "the State failed to prove the element that Appellant moved without advising the registration authority." In that regard, appellant contends he presented evidence at trial that, in January 2015, he lived at the Granville address he had registered with Officer Hagen.

Appellant is correct that his mother, aunt, cousin, and one neighbor testified that he lived at the Granville address in January 2015. However, the State presented evidence that appellant did not reside at the registered Granville address, but instead moved to San Felipe and lived with his ex-wife and children there.

Officer Hagen testified he unsuccessfully attempted to locate appellant at his registered Granville address on three different days in January 2015. Officer Leal also

7

attempted to locate appellant on three different occasions during the night shift, but appellant was never there. Officer Hagen testified that the trailer home looked abandoned, unlivable, and like a dump; it had broken or boarded up windows and broken doors. Officer Leal confirmed that the trailer home was in very poor condition and that it did not appear "anybody had lived there for quite some time." Officer Hagen also testified that appellant's cousin and neighbor, Davis, stated he had not seen anyone live at the Granville address since the previous resident had gone to jail in October 2014.

Further, Officer Hagen went to the home of appellant's children in San Felipe where he found appellant and his daughter D.W. Appellant never informed Officer Hagen that he had moved or intended to move from the Granville address. U.S. Marshal Kozielski confirmed that appellant answered the door at his children's San Felipe home and was there with D.W. U.S. Marshal Kozielski testified that he questioned D.W., "basically ask[ing] her how long Mr. Ward had been living at the residence and how long she had been living at the residence and she said she had been staying there for approximately a month and a half and that Mr. Ward had been there the entire time that she had been living there." Additionally, appellant's cousin, Davis, who lived across from appellant's registered trailer home, testified he did not see appellant at the Granville address in December 2014 and January 2015.

Considering all the evidence and any reasonable inferences therefrom, including the cumulative force of incriminating circumstances, we conclude that the jury as the sole judge of credibility and weight to be attached to testimony reasonably could have determined that appellant intended to change his registered Granville address, moved from that address, and failed to report and provide to his primary registration authority his new address. *See Johnson*, 509 S.W.3d at 322; *Ramsey*, 473 S.W.3d at 809; *Temple*, 390 S.W.3d at 360. Viewing the evidence in the light most favorable to the verdict, we

conclude the evidence is legally sufficient to support the jury's verdict. Accordingly, we overrule appellant's first issue.

## II.     Punishment Charge Error

Appellant contends in his second issue that he was egregiously harmed because the trial court erroneously submitted a punishment jury charge that allowed appellant's conviction for indecency with a child to be used as one of two previous felony convictions to enhance appellant's punishment to the habitual felony offender range of 25 to 99 years imprisonment. Appellant contends that, without the enhancement based on the indecency with a child conviction, he would have been subject to a five-year minimum punishment instead of the 25-year minimum for habitual felony offenders; and if the jury had known the "true minimum sentence was only five (5) years, they [sic] would have looked more favorably on Appellant and assessed a lower sentence."

In reviewing a jury charge, the court first determines whether error occurred. *Ngo v. State*, 175 S.W.3d 738, 743 (Tex. Crim. App. 2005); *Johnson v. State*, 416 S.W.3d 602, 609-10 (Tex. App.—Houston [14th Dist.] 2013, no pet.). If the court finds error, it then evaluates whether sufficient harm resulted from the error to require reversal. *Johnson*, 416 S.W.3d at 610; *see Ngo*, 175 S.W.3d at 743.

Here, the jury charge set out the allegations for indictment enhancement paragraphs A1, A2, A3, B, and C, and instructed the jury as follows:

> Enhancement Paragraph B of the indictment alleges that prior to the commission of the instant offense and Enhancement Paragraphs A1, A2, and A3, on September 14, 1999, in Cause Number 98R-016, in the 155th District Court of Austin County, Texas the Defendant was convicted of the felony offense of Indecency with a Child Sexual Contact and that said conviction and sentence was final. To this allegation in Enhancement Paragraph B of the indictment the Defendant has pleaded "Not True."

> Enhancement Paragraph C of the indictment alleges that, prior to the commission of the instant offense and Enhancement Paragraphs Al, A2,

9

A3, and Paragraph B, on November 26, 1990, in Cause Number 90R-391, in the 155th District Court of Austin County, Texas the Defendant was convicted of the felony offense of Unauthorized Use of a Motor Vehicle and that said conviction and sentence was final. To this allegation in Enhancement Paragraph C of the indictment the Defendant has pleaded "Not True."

If you find from the evidence, beyond a reasonable doubt, that the allegations set out in Enhancement Paragraph B and Enhancement Paragraph C are true as alleged in the indictment, finding that the defendant was previously finally convicted of two felony offenses, and the second previous felony conviction was for an offense that occurred subsequent to the first previous conviction having become final, then you will assess the punishment of the defendant at confinement in the Texas Department of Criminal Justice-Institutional Division for not less than twenty-five years or more than ninety-nine years, or life.

If you do not so find, you will proceed to consider if Enhancement Paragraph Al, A2, A3, B or C are true.

*           *           *

Enhancement Paragraph Al of the indictment alleges that, prior to the commission of the offense in this case, on May 23, 2006, in Cause Number 14593, in the 21st Judicial District Court of Texas, the Defendant was convicted of the felony offense of Manufacture/Delivery of a Controlled Substance, Penalty Group 1, <1G. To this allegation in Enhancement Paragraph Al of the indictment the Defendant has pleaded "Not True."

Enhancement Paragraph A2 of the indictment alleges that, prior to the commission of the offense in this case, on May 23, 2006, in Cause Number 14594, in the 21st District Court of Texas the Defendant was convicted of the felony offense of Manufacture/Delivery of a Controlled Substance, Penalty Group 1, <1G. To this allegation in Enhancement Paragraph A2 of the indictment the Defendant has pleaded "Not True."

Enhancement Paragraph A3 of the indictment alleges that, prior to the commission of the offense in this case, on January 6, 2005, in Cause Number 14208, in the 21st District Court of Texas the Defendant was convicted of the felony offense of Sex Offender's Duty to Register Life/Annually. To this allegation in Enhancement Paragraph A3 of the indictment the Defendant has pleaded "Not True."

The charge also instructed the jury to (1) find the allegations set out in

enhancement paragraphs A1, A2, A3, B, or C of the indictment "true," if it believed beyond a reasonable doubt that the allegations set out in those enhancement paragraphs are true; and (2) assess appellant's punishment at confinement for no less than two years or more than 20 years.

Appellant argues there is error in the jury charge because it allowed the State to use appellant's prior indecency with a child conviction to enhance the present offense of failure to comply with registration requirements after the State used the conviction to allege an essential element of the offense. Appellant argues that "the use of a prior conviction to prove an essential element of an offense bars the subsequent use of that prior conviction in the same indictment for enhancement purposes." *See Wisdom v. State*, 708 S.W.2d 840, 845 (Tex. Crim. App. 1986); *Musgrove v. State*, 425 S.W.3d 601, 614 (Tex. App.—Houston [14th Dist.] 2014, pet. ref'd).

The State concedes in its brief that it "erroneously used an Indecency with a Child conviction to enhance [appellant] as a habitual offender." However, the State contends that, even without that conviction and enhancement B, it "still proved [appellant] was punishable in the habitual offender range" because appellant's other prior convictions alleged in enhancement paragraphs A1, A2, and A3 placed him in that range.

Assuming, *arguendo*, there was error in the jury charge as appellant alleges, we must next determine whether the alleged charge error caused appellant actual harm. *See Arrington v. State*, 451 S.W.3d 834, 840 (Tex. Crim. App. 2015); *Johnson*, 416 S.W.3d at 610.

Because appellant failed to object to the jury charge, he can obtain reversal only if the error caused him egregious harm. *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984); *Orellana v. State*, 489 S.W.3d 537, 543 (Tex. App.—Houston [14th Dist.] 2016, pet. ref'd). Under this high standard, a judgment may be reversed only if

11

the error is so egregious and creates such harm that it deprives the accused of a fair and impartial trial. *See Almanza*, 686 S.W.2d at 172; *Orellana*, 489 S.W.3d at 543.

Appellant is denied a fair and impartial trial when the error (1) went to the very basis of the case; (2) denied the accused a valuable right; or (3) vitally affected the accused's defensive theory. *Orellana*, 489 S.W.3d at 543. The degree of harm is reviewed in light of the entire jury charge, the state of the evidence, argument by counsel, and any other relevant information revealed by the trial record as a whole. *Cosio v. State*, 353 S.W.3d 766, 777 (Tex. Crim. App. 2011); *Orellana*, 489 S.W.3d at 543-44. Egregious harm is determined on a case-by-case basis. *Hutch v. State*, 922 S.W.2d 166, 171 (Tex. Crim. App. 1996); *Johnson*, 416 S.W.3d at 611.

The State argues that appellant was not harmed in this case because, "[e]ven if the court were to remove the Indecency with a Child Enhancement completely, [appellant]'s prior convictions still placed him in the habitual offender punishment range" under Texas Penal Code Section 12.42(d) (Vernon Supp. 2018), which provides that:

> if it is shown on the trial of a felony offense other than a state jail felony punishable under Section 12.35(a) that the defendant has previously been finally convicted of two felony offenses, and the second previous felony conviction is for an offense that occurred subsequent to the first previous conviction having become final, on conviction the defendant shall be punished by imprisonment in the Texas Department of Criminal Justice for life, or for any term of not more than 99 years or less than 25 years.

Tex. Penal Code Ann. § 12.42(d). The chronological sequence of events to be proved is as follows: (1) the first conviction becomes final; (2) the offense leading to a later conviction is committed; (3) the later conviction becomes final; and (4) the offense for which defendant presently stands accused is committed. *Jordan v. State*, 256 S.W.3d 286, 290-91 (Tex. Crim. App. 2008). The State must prove beyond a reasonable doubt that a defendant's second previous felony conviction was committed

12

after the defendant's first previous felony conviction became final. *Id*. at 291. If the State provides prima facie evidence of an enhancement conviction, there is a presumption the conviction was final even if the record was silent on the issue of finality. *Wood v. State*, 486 S.W.3d 583, 588 (Tex. Crim. App. 2016); *Fletcher v. State*, 214 S.W.3d 5, 8 (Tex. Crim. App. 2007); and *Henry v. State*, 331 S.W.3d 552, 555 (Tex. App.—Houston [14th Dist.] 2011, no pet.).

Because appellant pleaded "not true" to the five enhancement allegations, the State presented "pen packets" containing the judgment and sentence for appellant's five prior convictions to prove each enhancement allegation. The evidence presented by the State showed as follows:

- appellant committed the offense of unauthorized use of a motor vehicle, a third-degree felony; he was granted six years' probation; probation was revoked after he violated several conditions of probation, including unlawfully carrying a weapon; he was sentenced to four years' confinement and completed his sentence on or before October 7, 1997;

- appellant committed the second-degree felony offense of indecency with a child on November 23, 1997; he was granted five years' probation; probation was revoked after appellant violated numerous conditions of probation (including failure to attend sex offender counseling and treatment); he was sentenced to five years' confinement and completed his sentence before September 14, 2004;

- appellant committed the third-degree felony offense of failure to register as a sex offender on June 15, 2004; he was granted ten years' probation; probation was revoked for violation of probation conditions; appellant was sentenced to eight years' confinement and completed his sentence on or before May 23, 2014;

13

- appellant committed the third-degree felony offense of delivery of a controlled substance on May 10, 2005; he pleaded guilty and was sentenced to eight years' confinement and completed his sentence on or before May 23, 2014;

- appellant committed the third-degree felony offense of delivery of a controlled substance on May 24, 2005; he pleaded guilty and was sentenced to eight years' confinement and completed his sentence on or before May 23, 2014.

Further, the judgments for the prior convictions for failure to register as a sex offender and delivery of a controlled substance stated that appellant did not file a notice of appeal. The judgment for the prior unauthorized use of a motor vehicle conviction was silent regarding appeal. Thus, all prior convictions are properly treated as final. *See Wood*, 486 S.W.3d at 588; *Fletcher*, 214 S.W.3d at 8. Additionally, as required by section 12.42(d): (1) the unauthorized use of a motor vehicle conviction became final; (2) the failure to register as a sex offender and delivery of a controlled substance offenses were committed and led to convictions; and (3) the conviction for failure to register as a sex offender and conviction for delivery of a controlled substance became final before appellant committed the present offense in January 2015. *See* Tex. Penal Code Ann. § 12.42(d); *see also Jordan*, 256 S.W.3d at 290-91.

Additionally, the jury found that the allegations in all five enhancement paragraphs were "true." Here, even without the indecency with a child conviction in Enhancement B, there were three other final felony convictions the jury found "true" — delivery of a controlled substance in Enhancements A1 and A2 and failure to register as a sex offender in Enhancement A3 — in addition to the unauthorized use of a motor vehicle conviction in Enhancement C that placed appellant within the habitual felony offender punishment range under Texas Penal Code Section 12.42(d).

14

Considering the record before us, we conclude that any alleged error in instructing the jury that appellant's conviction for indecency with a child could be used as one of two required prior convictions to enhance appellant's punishment to the habitual felony offender range was not harmful. Because appellant was not egregiously harmed by any alleged error, we overrule appellant's second issue.

## III.    Ineffective Assistance of Counsel

Appellant argues in his third issue that his "trial counsel's performance was deficient so that it prejudiced appellant's defense in failing to object to the punishment charge instructions regarding use of enhancements."

To prevail on a claim of ineffective assistance of counsel, an appellant must show that (1) counsel's performance was deficient because it fell below an objective standard of reasonableness; and (2) the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 689 (1984); *Lopez v. State*, 343 S.W.3d 137, 142 (Tex. Crim. App. 2011).

In order to satisfy the first prong, appellant must prove by a preponderance of the evidence that trial counsel's performance fell below an objective standard of reasonableness under the prevailing professional norms. *Lopez*, 343 S.W.3d at 142. A defendant must overcome a strong presumption that trial counsel's actions fell within the wide range of reasonable and professional assistance. *See id.*; *Garza v. State*, 213 S.W.3d 338, 348 (Tex. Crim. App. 2007). "Before granting relief on a claim that defense counsel failed to do something, we ordinarily require that counsel be afforded the opportunity to outline the reasons for the omission." *Roberts v. State*, 220 S.W.3d 521, 533-34 (Tex. Crim. App. 2007).

If counsel's reasons for his conduct do not appear in the record and there is at least the possibility that the conduct could have been grounded in legitimate trial

15

strategy, we will typically defer to counsel's decisions and deny relief on an ineffective assistance claim. *Garza*, 213 S.W.3d at 348. "'It is not sufficient that appellant show, with the benefit of hindsight, that his counsel's actions or omissions during trial were merely of questionable competence.'" *Lopez*, 343 S.W.3d at 142-43 (quoting *Mata v. State*, 226 S.W.3d 425, 430 (Tex. Crim. App. 2007)). To warrant reversal when trial counsel has not been afforded an opportunity to explain his reasons, the challenged conduct must be "'so outrageous that no competent attorney would have engaged in it.'" *Roberts*, 220 S.W.3d at 533-34 (quoting *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005)).

To satisfy the second prong, appellant must show that there is a reasonable probability — or a probability sufficient to undermine confidence in the outcome — that the result of the proceeding would have been different but for counsel's unprofessional errors. *Lopez*, 343 S.W.3d at 142.

In determining whether counsel was ineffective, we consider the totality of the circumstances of the particular case. *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999). Any allegation of ineffectiveness must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness. *Id.*; *see also Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005) ("Direct appeal is usually an inadequate vehicle for raising [an ineffective assistance] claim because the record is generally undeveloped."). Failure to satisfy either prong of the *Strickland* test defeats an ineffective assistance claim. *Strickland*, 466 U.S. at 697.

Appellant contends his trial counsel's performance was deficient because he "failed to object to the erroneous language used in the jury charge instructing the jury as to the application of the law regarding enhancements." Appellant seems to argue that his counsel did not object to the punishment charge instructing the jury that appellant's conviction for indecency with a child in Enhancement B could be used to

enhance his punishment to the habitual felony offender range. However, appellant does not explain how he was prejudiced by his counsel's allegedly deficient performance or that he would have received a different sentence but for his counsel's action. And we conclude that, based on the record before us, appellant cannot establish prejudice as required by *Strickland*. *See Strickland*, 466 U.S. at 689, 697.

Here, even if appellant's counsel had objected and Enhancement B had been removed from the charge, there were, as we explained above, several additional prior felony convictions to place appellant within the habitual felony offender punishment range. Additionally, the State presented damaging evidence which easily could have convinced the jury to assess appellant's punishment at 99 years. The State presented evidence that appellant's prior second-degree felony conviction for indecency with a child involved a seven-year old girl. The State also presented evidence that appellant had five prior third-degree felonies: unauthorized use of a motor vehicle, failure to register as a sex offender, possession of a controlled substance, and two instances of delivery of a controlled substance.

Further, the evidence showed appellant was granted probation for his convictions for unauthorized use of a motor vehicle, indecency with a child, and failure to register as a sex offender. Yet, he violated probation for each of these offenses by, among others, unlawfully carrying a weapon, failing to pay fees, failing to secure employment, failing to perform community service, failing to report to his probation officer, failing to attend sex offender counseling and treatment, smoking marihuana, committing assault, and consuming alcohol. The jury also heard that appellant committed indecency with a child very shortly after completing his sentence for the unauthorized use of a motor vehicle conviction. Only shortly after completing his sentence for the indecency with a child conviction, appellant committed the offense of failure to register as a sex offender. Thereafter, and only a few months apart, appellant

17

committed the offense of possession of a controlled substance and two instances of the offense of delivery of a controlled substance.

Considering the record in this case, we conclude appellant did not satisfy his burden to prove the second *Strickland* prong: that there is a reasonable probability that the result of the proceeding would have been different, *i.e.*, appellant would have received a lower sentence but for his counsel's allegedly unprofessional error. *Lopez,* 343 S.W.3d at 142. Accordingly, we overrule appellant's third issue.

## CONCLUSION

Having overruled appellant's three issues, we affirm the trial court's judgment.


/s/    Meagan Hassan
Justice


Do Not Publish — Tex. R. App. P. 47.2(b).
Panel consist of Justices Wise, Hassan, and Poissant.